# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

RICHARD CUNNINGHAM      \*CIVIL ACTION NO. 04-2528

VS.      \*MAGISTRATE JUDGE HILL

PETROLEUM PROFESSIONAL    \*BY CONSENT OF THE PARTIES
INT., ET AL.
<u>REASONS FOR JUDGMENT</u>

      Before the Court is the Motion for Summary Judgment filed by defendant

The Guardian Life Insurance Company of America ("Guardian") [rec. doc. 52].

Plaintiff Richard Cunningham ("Cunningham") has filed a memorandum in

opposition to Guardian's Motion, to which Guardian has filed a Reply. [rec. docs.

56, 60 and 62]. By this Motion, Guardian contends that its Administrator properly

and reasonably denied Cunningham's claim for long-term disability benefits under

an ERISA[1] group insurance plan issued by Guardian to Cunningham's employer,

Petroleum Professionals International, Inc. ("Petroleum") under the terms of the

plan's pre-existing condition clause. For the following reasons, Petroleum's

Motion for Summary Judgment will be **GRANTED**, and plaintiff's claims against

Guardian will be **DISMISSED WITH PREJUDICE**.

---

[1]The Employment Retirement Income Security Act (ERISA), 29 U.S.C. §1001, et. seq.

<u>Background</u>

Guardian issued a Group Insurance Plan, policy number 319743, to Petroleum (hereinafter the "plan"). That plan provides for both short and long-term disability benefits. Plaintiff, Richard Cunningham, was employed by Petroleum on March 24, 2003, and became eligible for benefits under the plan on May 1, 2003. [Statement of Uncontested Material Facts (SUMF), No. 6, rec. doc. 52-4].

Cunningham submitted a claim for disability benefits by form dated July 14, 2003, in which Dr. Plauche opined that Cunningham was totally disabled as of June 20, 2003 due to "degenerative disc disease." [R. 4]. Dr. Plauche further stated that Cunningham's symptoms first appeared on June 20, 2003 and that he treated Cunningham for this condition on June 24, 2003. [R. 4]. Cunningham received short-term disability payments under the plan from June 27, 2003 through September 25, 2003. [SUMF, No.14, rec. doc. 52-4].

Since Cunningham had not been insured under the plan for twelve consecutive months before filing his disability claim, his disability claim was subject to a pre-existing condition investigation. [SUMF, No. 11, rec doc. 52-4; P. 50].

The plan defines "pre-existing conditions" as follows:

A pre-existing condition is a *sickness* or *injury*, including all related conditions and complications, for which, in the look back period, you:

> (a) receive advice or treatment from a *doctor;*

> (b) take prescribed drugs;

> (c) receive other medical care or treatment, including consultation with a *doctor.*

You may have been prescribed drugs by a *doctor* for a condition to be taken during the look back period. In that case, such condition or a related condition will be considered pre-existing.

The "look back period" is the three months before the latest of: (a) the effective date of your insurance under this *plan*; ...

*    *    *

No benefits are payable for *disability* due to a pre-existing condition, unless the *disability* starts after you complete at least one full day of *active work* after the date you are insured under this *plan* for 12 months in a row.

*    *    *

We do not cover any *disability* that starts before your insurance under this *plan*. [P. 50]. (emphasis in the original)

Upon receipt of Cunningham's disability claim, Guardian began investigating whether Cunningham's alleged disability, "degenerative disc disease", was a pre-existing condition and thus excluded under the terms of the

plan.  Accordingly, Guardian asked Cunningham to provide information about his previous health care providers. [R. 1].  After further consultation with Cunningham by telephone, Guardian advised Cunningham that an extension of time was necessary for Guardian to obtain Cunningham's medical records in order to determine his eligibility for long-term disability benefits. [R. 50-51].

Medical records were obtained from various health care providers.  Review of these records indicate that an MRI of the lumbar spine was performed on June 25, 2003.  That study indicated "multilevel mild degenerative disc and facet disease without significant spinal canal stenosis, neural foraminal stenosis or focal disc herniation."  Also noted was a "cystic structure" at the S-2 (second sacral) level which "potentially may relate to a tarlov cyst of the nerve root sheath ...."  Accordingly, the radiologist (Dr. Dozier) noted that "clinical correlation for patient's symptomatology to the S-2 nerve root [was] needed."  The radiologist further recommended that additional imaging of this area, with contrast,  be considered.  [R. 35-36].

Dr. Plauche referred Cunningham to neurosurgeon, Dr. Vaughn. [R.  4, 37]. On July 16, 2003, Dr. Vaughn took a complete medical history from Cunningham and performed a complete physical examination.  At the time of his appointment, Dr. Vaughn noted that Cunningham had a "long-standing history of lumbar back

pain with intermittent exacerbations" and that he was taking, among other medications, Vioxx and Skelaxin. Dr. Vaughn reviewed Cunningham's June 25, 2003 MRI, which he said, indicated "multilevel degenerative disc disease L3-4, L4-5, L5-S1" with "[n]o significant spinal canal or neuroforaminal stenosis." "Incidental note" was made of a "probable Tarlov cyst" at the S-2 level, which Dr. Vaughn opined was "probably unrelated to [Cunningham's] symptoms." Dr. Vaughn's impression included "chronic lumbar back pain with intermittent exacerbations." Dr. Vaughn discussed in detail his treatment plan for Cunningham with Cunningham's "supervising physician" (presumably Dr. Plauche) who agreed with Dr. Vaughn's treatment plan. The treatment plan consisted of a continuation of physical therapy, no new prescription medication and a return visit in six weeks. [R. 39]. Notably, Dr. Vaughn did not recommend any further imaging of the S-2 area.

Cunningham returned to Dr. Vaughn on September 8, 2003. At that time, Dr. Vaughn noted Cunningham's history of degenerative disc disease and Cunningham's complaints of low back pain. He also noted that Cunningham was taking "Vioxx and Skelaxin intermittently for management of symptoms." His impression included "chronic lumbar back pain with intermittent exacerbation ...." Dr. Vaughn again opined that the "probable Tarlov cyst" at the S-2 level, was

"probably unrelated to [Cunningham's] symptoms." Dr. Vaughn performed a trigger point injection, but his treatment plan remained the same, that is, physical therapy and further office follow-up. Vaughn noted that a functional capacity evaluation might be in order. [R. 40-41]. Dr. Vaughn issued an Attending Physician's Statement of Disability listing Cunningham's disabling diagnosis as "back pain" with "degenerative disc disease" shown on the MRI as the objective finding supporting his opinion of the disabling condition. [R. 34].

On September 8, 2003, October 17, 2003, and November 10, 2003, Dr. Vaughn issued temporary work status reports finding Cunningham unable to work until his next scheduled evaluation. [R. 48, 23, 100]. These work status reports do not list a diagnosis or disabling condition.

Records from Dr. Stubbs, an orthopaedic surgeon, revealed that Dr. Stubbs had previously seen Cunningham on October 15, 2002. At that time, Cunningham reported "lower back pain" since August 23, 2002 "when he bent over to get a drink out of the ice chest", and that he had seen Dr. Plauche "who treated him with some Vioxx, Skelaxin and hydrocodone" and also ordered plain film x-rays. At the time of Dr. Stubbs' evaluation, Cunningham was still taking Vioxx and Skelaxin. Dr. Stubbs indicated that the plain film x-rays showed "some loss of disc height and degeneration at the L5-S1 joint ...." His impression was that

Cunningham had "mild degenerative disc disease with low back pain." Dr. Stubbs' treatment plan included back exercises and a prescription for physical therapy. Cunningham was also given "some anti-inflammatories." Cunningham was to return "in several weeks ...." [R. 88]. The record reveals that Cunningham again saw Dr. Stubbs on November 26, 2002, however, the record does not contain any office notes for Cunningham's return appointment on that date. [R. 89].

Records from Poret's Thrifty Way Pharmacy reveal that Cunningham filled "new" prescriptions for Vioxx prescribed by Dr. Stubbs on March 27, 2003 and September 8, 2003, and that he refilled a prescription for Vioxx approved by Dr. Stubbs on November 3, 2003. [R. 66].

On December 18, 2003, Cunningham's claim for long-term disability benefits under the plan was denied on the ground that his claimed disability was subject to the pre-existing condition clause in the policy. [R. 101-103]. The denial decision reads in pertinent part as follows:

> ... [Y]ou ceased active full-time work on June 19, 2003 degenerative disc disease as stated on the Attending Physician's Statement completed on July 14, 2003 by Dr. Warren Plauche. [sic] To investigate your claim, we requested records from your treating physicians and your pharmacy records, to obtain a complete medical history during the look-back period of February 1, 2003 through April 30, 2003. According to the pharmacy records submitted by Poret's

Thrifty Way Pharmacy, the prescription drug Vioxx was filled on March 27, 2003. A review of the office notes from October 15, 2002 reveal you were currently treating with Vioxx for lower back pain which was determined at that time to be caused by degenerative disc disease with low back pain.

As you took prescribed drugs during the look back period and this treatment is related to your current disability, your disability is pre-existing ... and, regretfully, no benefits are payable at this time. [R. 102].

Guardian advised Cunningham of his right to appeal its determination that his degenerative disc disease was a pre-existing condition precluding payment of long-term disability benefits, and he was expressly provided an opportunity to submit medical proof contradicting that finding. [R. 102].

On June 14, 2004, Cunningham, through counsel, appealed Guardian's determination arguing that he was entitled to long-term disability benefits because he had disclosed his "back problem" to Petroleum on March 18, 2003 in a pre-employment medical, social and occupational questionnaire and that Petroleum nevertheless accepted him for employment, that Petroleum agreed to provide him long-term disability benefits despite his disclosure, and that Guardian received premiums for those benefits without determining the nature and extent of his "back problem", thereby waiving the plan's pre-existing condition clause.

Notably, Cunningham did not dispute Guardian's determination that he had been previously diagnosed with degenerative disc disease in October 2002, or that

he had taken Vioxx to treat this condition in October 2002 and March 2003, or that the Vioxx was related to his currently claimed disability. [R. 109-110; SUMF, No. 23 and 24, rec. doc. 52-4]. Moreover, Cunningham did not provide any additional medical documentation in support of his appeal, submitting only a copy of the March 18, 2003 medical, social and occupational history questionnaire. [R. 111].

Cunningham's appeal was denied by the Guardian appeals committee on August 3, 2004. On appeal, Guardian concluded that based on the information submitted the decision to deny benefits would be upheld. In response to Cunningham's argument of waiver based on the disclosure of his condition to Petroleum, Guardian explained that the pre-employment questionnaire is not a condition for coverage under the plan and that any claim for benefits is subject to the terms of the plan. [R. 106-107].

On November 10, 2004, plaintiff filed an original petition in the 15th Judicial District Court in Lafayette Parish, Louisiana, against defendants, Petroleum and Guardian for the recovery of past due long-term disability insurance benefits due under the plan[2], interest, and Louisiana statutory penalties and attorney's fees pursuant to La.R.S. 22:657. [rec. doc. 1, ¶ 15]. In his original

---

[2] Cunningham alleges that his long-term disability benefits due under the Plan are 60% of his salary following an elimination period of 90 days of disability, continuing until he is 65. [doc. 1, ¶ 11].

petition, Cunningham mirrors the arguments he made on appeal of Guardian's decision to deny him long-term disability benefits under the plan, namely, that benefits are owed because of Cunningham's prior disclosure of his back problems to Petroleum, which he asserts acts as a waiver of the plan's pre-existing condition clause.  [See rec. doc. 1, ¶ 5, ¶ 6, 11 and 15].

The matter was removed to this court on December 15, 2005, pursuant to 28 U.S.C. §1441, under this court's federal question jurisdiction (28 U.S.C. § 1331). [rec. doc. 3].  All parties have consented to the exercise of this Court's jurisdiction by the undersigned.

By Joint Stipulation filed on June 3, 2005, the parties agreed that "the Group Insurance Policy issued by Guardian to [Petroleum], under which plaintiff claims long term disability benefits, is an employee welfare benefit plan governed by [ERISA]".  [rec. doc. 32].  On July 19, 2005, the parties further stipulated that ERISA preempts all state law claims against Guardian, that the administrative record is complete and that the plan grants the plan administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan. [rec. doc. 37].

By the instant Motion, Guardian moves for summary judgment under Rule 56, Federal Rules of Civil Procedure. Guardian contends that based on the administrative record, its decision to deny Cunningham's claim for long-term

disability benefits was reasonable, and therefore, did not constitute an abuse of discretion.  More specifically, Guardian contends that Cunningham had pre-existing degenerative disc disease and that during the plan's look back period, February 1, 2003 through April 30, 2003, Cunningham took prescription medication for that or a related condition.  Guardian relies on Dr. Stubbs' records wherein he opined on October 15, 2002 that Cunningham had "mild degenerative disc disease with low back pain" which was being treated by Dr. Plauche with anti-inflammatories including Vioxx, and the records of Poret's Thrifty Way Pharmacy which indicate that on March 27, 2003 (within the look back period) that Cunningham filled a "new" prescription for Vioxx.

Cunningham opposes the Motion arguing that Guardian should not have relied on Dr. Plauche's broad representation in the disability benefits claim form submitted to Guardian listing Cunningham's disabling condition as "degenerative disc disease."  Rather, Cunningham asserts that his disabling condition should have been more narrowly construed.  More specifically, Cunningham argues that although he had been diagnosed with degenerative disc disease in October 2002, that disease was limited to the L5-S1 level.  He asserts, however, that the disability for which he sought benefits was not caused by the previously diagnosed degenerative disc disease at the L5-S1 level, but rather was caused by degenerative disc disease at the L3-4 and L4-5 levels as well as the "probable

Tarlov cyst" noted in the June 25, 2003 MRI as read by radiologist Dr. Dozier and neurosurgeon Dr. Vaughn. He contends that his degenerative disc disease at the L3-4 and L4-5 levels was not diagnosed or treated prior to June 20, 2003.

Therefore, Cunningham asserts that the disease at those levels is not a pre-existing condition. Cunningham also argues that because his "probable Tarlov cyst" was not discovered until the June 25, 2003 MRI, that condition is likewise not a pre-existing condition excluding coverage. In his Statement of Uncontested Material Facts, Cunningham also asserts that there is no factual basis in the record for Guardian to have found that Dr. Stubbs prescribed Vioxx to treat pain associated with his degenerative disc disease. [SUMF, No. 1, rec. doc. 60].

<u>Summary Judgment Standard</u>

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of

evidence supporting the non-moving party's claim. *Celotex Corp.,* 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

<u>Standard of Review</u>

The parties have stipulated that Cunningham's claims against Guardian are controlled by the Employees' Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. [rec. doc. 31, 35 and 37]. As such, Cunningham's claim is limited to an appeal of the denial of his claim pursuant to 29 U.S.C. § 1132(a)(1)(B): "A civil action may be brought by a participant or beneficiary . . . to recover benefits due to

him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

"ERISA provides federal courts with jurisdiction to review benefit determinations by fiduciaries or plan administrators." *Bratton v. National Union Fire Insurance Company of Pittsburgh, PA*, 215 F.3d 516, 521-22 (5th Cir. 2000). "[A] denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 521 citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113-115, 109 S.Ct. 948 (1989). "When an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Bratton,* at 521 n.4 citing *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (*en banc*). The parties have stipulated that the plan vests Guardian with the discretionary authority to determine eligibility for benefits and to construe the terms of the group policy. [rec. docs. 31, 35 and 37]. Accordingly, this Court must apply the abuse of discretion standard in reviewing Guardian's decision to deny Cunningham long-term disability benefits. *See also*, *Goselnik v. American Tel. and Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001); *Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1305 (5th Cir. 1994).

When applying the abuse of discretion standard to factual findings, courts "analy[ze] whether the plan administrator acted arbitrarily or capriciously. (citations omitted). A decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence.' (Citations omitted). An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Lain v. Unum Life Insurance Company of America,* 279 F.3d 337, 342-43 (5th Cir. 2002).

With respect to the question of what evidence the court may consider in determining whether Guardian abused its discretion, the Fifth Circuit has been clear: "when assessing factual questions, the district court is constrained to the evidence before the plan administrator." *Vega*, 188 F.3d at 299. Further,"[t]he administrator has no duty to contemplate arguments that could be made by the claimant." *Id.* Moreover, claimants " *must* present their strongest available case to the plan administrator, because the primary decision is made at that point." *Duhon,* 15 F.3d at 1309 (emphasis in the original). This rule is based on the recognized Congressional intent "to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement." *Id.* Thus, "attempt[s] to circumvent [this] congressional mandate by

failing to fully argue [a] claim and provide supporting evidence during the administrative appeal process, in the hopes that [the] case w[ill] be decided in the federal courts, must fail." *Id.* As a result, the district court inquires only whether "the record adequately supports the administrator's decision." *Vega,* 188 F.3d at 298.

Cunningham argues that because Guardian serves as both the insurer and administrator of the plan the court should apply a "sliding scale" abuse of discretion standard; the greater the evidence of conflict on the part of the administrator, the less deferential the court's abuse of discretion standard should be. *Vega*, 188 F.3d at 297-299; *See also Bratton*, 215 F.3d at 521 n.4. In such cases, the court should consider the potential conflict as a "factor to be considered in determining whether the administrator abused its discretion in denying the claim." *Vega,* 188 F.3d at 297. While the "sliding scale" may be applicable in this case, that does not change the fact that the plan affords discretion to the administrator, nor does the court's recognition of a potential conflict raise the level of scrutiny. *Id.*; *See also Duhon*, 15 F.3d 1306; *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 599 (5th Cir. 1994). Rather, this court "need only assure that the administrator's decision falls somewhere on a continuum of reasonableness, even if on the low end." *Vega,* 188 F.3d at 297.

In the instant case, Cunningham has produced no evidence to demonstrate the nature and extent of the alleged potential conflict. However, it is undisputed

that Guardian serves as both insurer and claims fiduciary of the plan.

Accordingly, this court will assume *arguendo* that Guardian has an "inherent

conflict of interest".  See *Lain*, 279 F.3d at 343; *Robinson v. Aetna Life Insurance

Co.*, 443 F.3d 389, 395 (5ᵗʰ Cir. 2006).  In considering records similar to that

which exists in this case, that is, where a conflict theoretically exists but the

plaintiff has provided no actual evidence with respect to the degree of the alleged

conflict, the Fifth Circuit has determined that "it is appropriate to review the

administrator's decision with only a modicum less deference than [the court]

otherwise would."  *Vega,* 188 F.3d at 301; *Robinson*, 443 F.3d at 395; *Lain*, 279

F.3d at 343. Guardian's decision will be upheld if it is supported by "some

concrete evidence in the administrative record."  *Vega*, 188 F.3d at 302; *Robinson*,

443 F.3d at 395.

    In light of the parties' stipulation, the above cited jurisprudence and

consistent with the Fifth Circuit's dictates in *Vega*, *Robinson* and *Lain*, this Court

will apply the abuse of discretion standard affording Guardian's decision to deny

Cunningham benefits only "a modicum less deference" than would be accorded a

plan administrator fully independent from Guardian.

<u>Law and Analysis</u>

    Under the appropriate standard of review, this court's task is not to

determine whether Guardian could have reached a different decision, but rather,

based on the record before Guardian, whether the decision reached by Guardian was reasonable and supported by concrete evidence in the record, keeping in mind that Guardian had no duty to contemplate arguments that could have been made by Cunningham, but were not. *Vega*; *Lain; Robinson*, *supra*.

Guardian denied Cunningham benefits based on its determination that Cunningham had degenerative disc disease for which he took a prescription drug, Vioxx, within the look back period, and that because this medication was related to his current claimed disability, degenerative disc disease, benefits were not payable under the pre-existing condition exclusion. This determination was primarily based on the records of Dr. Stubbs and of Poret's Thrifty Way Pharmacy.

 In his appeal to Guardian, Cunningham did not dispute Guardian's finding that his degenerative disc disease was pre-existing nor that he took Vioxx for that condition during the look back period. Further, he did not argue that his disability was caused by undiagnosed or non-pre-existing lumbar disc disease at a different level, nor by a Tarlov cyst as he argues in this court. Moreover, Cunningham submitted no medical evidence to Guardian to refute, or even call into question, any of Guardian's findings.

At the time of his appeal to Guardian, Cunningham knew the contents of the medical records of Dr. Stubbs and of Poret's Thrifty Way Pharmacy upon which Guardian relied, and he was aware of the findings contained in the June 25, 2003

MRI and Dr. Vaughn's interpretation of that study on which his present arguments are based. Cunningham had the opportunity to present his arguments based on this evidence to Guardian and also had the opportunity to present additional evidence (if he had any) to dispute Guardian's findings; no additional evidence was submitted. Rather, Cunningham relied solely on his legal argument, that is, that the pre-existing conditions exclusion was waived by virtue of Cunningham's disclosure of his back problems to Petroleum in his March 18, 2003 pre-employment questionnaire. Under binding Fifth Circuit authority, Cunningham's attempt to argue that his low back pain was caused by degenerative discs at L3-4 and L4-5 and/or the Tarlov cyst rather than a degenerative disc at L5-S1, made for the first time in this court, must fail. *Duhon*, 15 F.3d at 1309.

Moreover, under the appropriate standard of review and based on the record before Guardian, Guardian's decision was not an abuse of discretion. Guardian's denial of benefits to Cunningham was reasonable and supported by concrete, substantial evidence in the administrative record. The record clearly indicates that prior to his coverage under Guardian's plan Cunningham had a history of low back pain, had been diagnosed with degenerative disc disease and that he filled a prescription for Vioxx for that condition within the look back period. The record demonstrates that Cunningham visited orthopedic surgeon Dr. Stubbs on October 15, 2002 complaining of "lower back pain." He related to Dr. Stubbs that he had

previously seen Dr. Plauche who had treated him with Vioxx. At the time of Dr. Stubbs' examination, Cunningham was still taking Vioxx. Dr. Stubbs' impression was that Cunningham had "mild degenerative disc disease with low back pain." On March 27, 2003, within the look back period, Cunningham filled a "new" prescription for Vioxx authorized by Dr. Stubbs at Poret's Thrifty Way Pharmacy.

Although Cunningham advances a variety of arguments in opposition to summary judgment herein, none justifies a finding that Guardian abused its discretion. Cunningham argues that there is no factual basis in the record for Guardian to have concluded that Dr. Stubbs prescribed Vioxx to treat pain associated with his degenerative disc disease. However, there is more than a rational connection between the facts found by Guardian and the evidence contained in the administrative record. Dr. Stubbs' notes indicate that Cunningham's October 2002 office visit was "for evaluation" of "low back pain" which he had been experiencing since August 2002 when he hurt his back bending over an ice chest. These notes further indicate that Cunningham reported that he had seen Dr. Plauche "who treated him with some Vioxx" and that Cunningham was still taking the Vioxx at the time of his appointment with Dr. Stubbs. Dr. Plauche had also ordered plain film x-rays of Cunningham's lumbar spine, films which Dr. Stubbs reviewed in rendering his diagnosis of "degenerative disc disease with low back pain." Dr. Stubbs' records clearly indicate that he gave

Cunningham "some anti-inflammatories" for his condition at the time of his evaluation. Although Dr. Stubbs' records do not expressly state that Dr. Stubbs subsequently prescribed Vioxx for Cunningham's low back pain associated with his degenerative disc disease, considering Cunningham's complaints at the time of Dr. Stubbs' evaluation, the history he presented to Dr. Stubbs, the findings revealed in the lumbar plain film x-rays reviewed by Dr. Stubbs, and the records of Poret's Thrifty Way Pharmacy, that was the logical conclusion drawn by Guardian. That conclusion is fully supported by the administrative record.

Moreover, although Cunningham now posits that his current disability is exclusively caused by, or attributable to, either the degenerative disc disease at the L3-4 and L4-5 levels and/or the "probable Tarlov cyst" revealed in the June 25, 2003 MRI, nothing in the record before Guardian or before this court mandates that conclusion. To the contrary, with respect to the probable Tarlov cyst, Dr. Vaughn's records specifically contradict the claim Cunningham seeks to advance here. Dr. Vaughn was unable to clinically correlate the probable Tarlov cyst and Cunningham's symptomatology and hence, repeatedly opined that the Tarlov cyst was "probably unrelated to [Cunningham's] symptoms." Moreover, given Cunningham's well documented "long-standing history of lumbar back pain with intermittent exacerbations", it cannot be definitively determined that Cunningham's current disability is *not* related to or *not* attributable to, in whole or

in part, his undisputed previously diagnosed degenerative disc disease at the L5-S1 level. Absent some affirmative medical evidence in the record supporting Cunningham's present contention that the exclusive basis for his claimed disability is the L3-4 or L4-5 disc levels, the court cannot find petitioner's argument is sufficient to defeat summary judgment herein.

That is particularly so since Cunningham never advanced these arguments to Guardian during the claims review process. His failure to do so precludes his right to make those arguments here. *Vega*; *Duhon*.

For the foregoing reasons, the Court finds that Guardian did not abuse its discretion in denying Cunningham's claim for long-term disability benefits under the plan based on the plan's pre-existing conditions exclusion. Accordingly, Guardian's Motion for Summary Judgment will be granted and the Cunningham's claims against Guardian will be dismissed with prejudice.

Lafayette, Louisiana, June 8, 2006.

C. Michael Hill

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE